**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| TODD CAMPBELL, in his capacity as | : | |
| a Manager of New Horizon | : | |
| Association, LLC, DWAYNE | : | |
| TURNER, in his capacity as a | : | |
| Manager of New Horizon Association, | : | |
| LLC, BILLY FLORENCE, | : | |
| individually, PEGGY FLORENCE, | : | |
| individually, NEW HORIZON | : | |
| ASSOCIATION, LLC, a Georgia | : | |
| Limited Liability Co., SUMMIT | : | CIVIL ACTION NO. |
| BUSINESS SYSTEMS, LLC, a | : | 2:08-CV-0045-RWS |
| Georgia Limited Liability Co., | : | |
| individually, CHUCK GOETCHEL, | : | |
| individually, MAIN STREET | : | |
| ENTERPRISES, INC., a Michigan | : | |
| Corporation, TIM MARKS, | : | |
| individually, and JUCO | : | |
| CONSULTING, LLC, a Florida | : | |
| Limited Liability Co., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| QUIXTAR, Inc., | : | |
| | : | |
| Defendant. | : | |

## <u>ORDER</u>

Now before the Court is Defendant's Motion to Stay Litigation, Compel

Alternative Dispute Resolution, and Dismiss [21]; Plaintiffs' Motion to Remand [22]; and Plaintiffs' Motion for Status Conference [36]. As an initial matter, Plaintiffs' Motion for Status Conference is **GRANTED nunc pro tunc**. After considering the entire record, the Court enters the following Order.

## Background

This is an action in which Plaintiffs seek a declaratory judgment concerning the enforceability of certain non-compete and non-solicitation provisions contained in their former distributorship contracts with Defendant Quixtar, the successor to the North American division of the multi-level marketing company known as Amway Corporation. Plaintiffs also seek injunctive relief.

The individual Plaintiffs in this action are all former distributors of Quixtar who entered into agreements with Quixtar containing clauses which purport to forbid them from competing with Quixtar or soliciting former Quixtar distributors for a certain period after the resignation or termination of their distributorship relationship with Quixtar. Prior to this lawsuit, each of the individual Plaintiffs resigned (or were terminated from) their distributor arrangements with Quixtar. They now seek to compete with Quixtar by

2

associating with a multi-level marketing company known as Mona Vie.

Plaintiff New Horizon Financial Association, LLC, which is co-managed by

Plaintiffs Todd Campbell and Dwayne Turner, is a Mona Vie distributor which

has associated most of the remaining Plaintiffs in its own network as Mona Vie

distributors.  All Plaintiffs are now either Mona Vie distributors or consultants

of Mona Vie distributors in a downline business relationship with New Horizon

Financial.  All Plaintiffs seek to determine whether Quixtar may enforce against

them the non-compete and non-solicitation covenants in the individual

Plaintiffs' agreements with Quixtar.

Defendant Quixtar is a Virginia corporation with its principal place of

business in Michigan.  (Compl. ¶ 11.)  All Plaintiffs are diverse in citizenship

from Quixtar except Plaintiff Main Street Enterprises, Inc. ("Main Street"),

which is a Michigan corporation.  The joinder of Main Street's claims in this

action ostensibly destroys complete diversity between the parties.  It is

undisputed that the amount in controversy exceeds $75,000.

Plaintiffs brought this action in the Superior Court of White County,

Georgia, on March 5, 2008.  That same day, Defendant removed the action to

this Court on the basis of diversity jurisdiction, contending that this Court

should ignore the citizenship of Main Street because it is a "nominal" or

fraudulently-joined party.  Plaintiffs have since moved to remand this action to

the Superior Court, contending that this Court is without jurisdiction because

Main Street's residency must be considered and the parties are not completely

diverse.  Assuming the Court has jurisdiction, Defendant has also moved to stay

this action and compel Plaintiffs to participate in an alternative dispute

resolution mechanism provided in the distributor agreements.  The Court now

takes up these Motions.

**Discussion**

**I.      Motion to Remand**

Unless Congress explicitly provides otherwise, a defendant may remove

to federal court a civil action brought in state court, provided that the federal

court has original jurisdiction over the action.  28 U.S.C. § 1441(a)-(b).  The

party seeking removal bears the burden of establishing federal jurisdiction.

Friedman v. New York Life Ins. Co, 410 F.3d 1350, 1353 (11th Cir. 2005).

Removal statutes should be construed narrowly with any doubt resolved in

favor of remand.  Allen v. Christenberry, 327 F.3d 1290, 1293 (11th Cir. 2003);

Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996); see also Burns v.

4

Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; . . . removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.").

Original jurisdiction may be based on either the presence of a federal question or diversity of citizenship of the parties.  28 U.S.C. §§ 1331, 1332. Where the Court's removal jurisdiction is predicated on diversity of citizenship, several constraints on the exercise of jurisdiction exist.  First, complete diversity is required.  That is, every plaintiff must be diverse from every defendant.  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).  Second, even where there is complete diversity, the amount in controversy must exceed $75,000.  28 U.S.C. § 1332.  Removal "is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed."  Williams v. Best Buy Co., 269 F. 3d 1316, 1319 (11th Cir. 2001) (citations and quotations omitted).

Sound reasons exist for so limiting the exercise of removal jurisdiction. For one, the removal of cases to federal courts implicates principles of federalism.  As the Supreme Court has explained:

> The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."

Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109, 61 S. Ct. 868, 85 L. Ed. 1214 (1941) (quoting Healy v. Ratta, 292 U.S. 263, 270, 54 S. Ct. 700, 78 L. Ed. 1248 (1934)).  What is more, resolving any doubt in favor of remand "prevents exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal, a result that is costly not just for the plaintiff, but for all the parties and for society when the case must be relitigated."  Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (internal quotations omitted).

The limitations on removal jurisdiction also recognize that the plaintiff is the master of his own complaint.  As such, he remains free to join such claims

6

or parties in a single action as are permitted under the law.  The same is no less true where a plaintiff's decision to join a non-diverse or forum-resident party may have repercussions for purposes of removal jurisdiction.  See, e.g., Triggs, 154 F.3d at 1291 (stating that "the motive of the plaintiff [in joining defendants], taken by itself, does not affect the right to remove"); see also Garbie v. DaimlerChrysler Corp., 211 F.3d 407, 410 (7th Cir. 2000) ("Even if the [non-diverse parties] were added to prevent removal, that is their privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum."); Boyer v. Snap-on Tools Corp., 913 F.2d 108, 110 (3d Cir. 1990) ("[P]laintiffs have the option of naming those parties whom they choose to sue, subject only to the rules of joinder of necessary parties. While the plaintiffs' decision in this regard may have repercussions for purposes of diversity jurisdiction, there is no reason for a court to interfere with this inevitable consequence of a plaintiff's election unless the plaintiff had impermissibly manufactured diversity or used an unacceptable device to defeat diversity.").

Plaintiffs move to remand this action, contending that Main Street, a Michigan resident, is not diverse from Defendant Quixtar and thus this Court is

7

without subject matter jurisdiction over the instant action.  Defendants respond by proffering three arguments that this Court should ignore Main Street for purposes of the jurisdictional analysis.   The Court considers each of Defendant's three arguments in turn.

### A.    Typographical Error in Complaint

First, Defendant contends that, although Main Street is listed in the caption of the Complaint, it has not in fact brought any claims against Quixtar because the body of the Complaint references only Main Street's sole owner, Matthew Abraham, as opposed to Main Street, as alleging claims against Quixtar.  As Plaintiffs point out, however, both the Georgia Rules of Civil Procedure and the Federal Rules of Civil Procedure have liberal pleading requirements, and each require that pleading be construed to meet the ends of justice.  Fed. R. Civ. P. 8(f) (pleadings should "be construed so as to do justice"); O.C.G.A. § 9-11-8(f) ("All pleadings shall be construed as to do substantial justice.").  Plaintiffs contend that a typographical error caused the insertion of Mr. Abraham's name as opposed to Main Street's in the sections of the Complaint that assert claims against Quixtar.  In addition to Plaintiffs' explanation, it is also apparent from a companion case in this Court, <u>Campbell</u>

v. Quixtar, 2:08-CV-0044-RWS, that Plaintiffs in this action intended to bring claims by Main Street against Quixtar because Main Street's presence (and the absence of Matthew Abraham) in this action is the only discernable difference between the two cases.  Finally, Defendant has asserted no ground for concluding that it would suffer prejudice were the Court to construe Plaintiffs' Complaint as bringing claims on behalf of Main Street.

In light of the inclusion of Main Street in the caption, Plaintiffs' clear explanation in their Motion to Remand, the obvious intent of Plaintiffs to bring claims on behalf of Main Street, and the absence of prejudice to Defendant, the Court finds that the Complaint states claims for relief by Main Street against Defendant.

## B.    Fraudulent Joinder

Defendant's second ground in opposition to remand is that Main Street is not a real party in interest and thus was fraudulently joined as a Plaintiff in this action.

Even though allegations of fraudulent joinder normally apply to a plaintiff's alleged fraudulent joinder of a resident *defendant* to defeat federal jurisdiction, "[t]he fraudulent joinder doctrine can be applied to the alleged

9

fraudulent joinder of a plaintiff." Miller v. Giesecke & Devrient Am., Inc., No. 3:06-CV-1466-D, 2007 WL 518557, at *2 (N.D. Tex. Feb. 20, 2007) (gathering cases); Hodach v. Caremark RX, Inc., 374 F. Supp. 2d 1222, 1225 (N.D. Ga. 2005) (concluding that fraudulent joinder doctrine in Eleventh Circuit applied equally to joinder of plaintiffs to destroy diversity); cf. Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000) (holding that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action"). But see Johnston Industries, Inc. v. Milliken & Co., 45 F. Supp. 2d 1308, 1312 (M.D. Ala. 1999) (declining to apply fraudulent joinder doctrine to plaintiff and concluding that proper procedure is to move to dismiss in state court allegedly misjoined, non-diverse plaintiff and then seek removal after complete diversity is present).

"The burden of establishing fraudulent joinder is a heavy one," Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1380 (11th Cir. 1998), and such a claim must be "supported by clear and convincing evidence." Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962); see also, e.g., Everett v. MTD Products, Inc., 947 F. Supp. 441, 444-45 (N.D. Ala. 1996) ("A defendant has a high burden in establishing fraudulent joinder—it must present evidence

that compels the conclusion that the joinder is without right and made in bad

faith.  A defendant must assert with particularity that a joinder is fraudulent and

support the claim by clear and convincing evidence.") (internal quotations

omitted).  As it has been applied in this district, "where the removing party

alleges a non-diverse plaintiff has been fraudulently joined, the removing party

must prove that either: (1) the non-diverse plaintiff cannot state a cause of

action against the defendants in state court (for example, where the non-diverse

plaintiff's claims are barred as a matter of law or the non-diverse plaintiff is not

a real party in interest); or (2) the plaintiff has fraudulently pleaded

jurisdictional facts to destroy complete diversity."  Hodach , 374 F. Supp. 2d at

1225.  But "[i]f there is even a possibility that a state court would find that

[joinder was proper], the federal court must find that joinder was proper and

remand the case to state court."  Id. (citations and quotations omitted).

Quixtar contends that Main Street is not a real party in interest, and thus

fraudulently joined, because it has never had a contractual arrangement with

Quixtar and is thus in no position to seek declaratory relief concerning the

enforceability of Quixtar's contracts with the individual Plaintiffs in this action.

Citing Haldi v. Piedmont Nephrology Associates, P.C., 641 S.E.2d 298, 299-

300 (Ga. Ct. App. 2007), Quixtar contends that Georgia law does not allow an individual who is not a party to a non-compete agreement to challenge the enforceability of its provisions.  (<u>See</u> Resp. to Motion to Rem. [26] at 14.) Rather, Quixtar contends, Matthew Abraham, the owner of Main Street and a plaintiff in the related action, is the proper party to seek a declaratory judgment because he entered into a contract with Quixtar purportedly restricting him from competition and solicitation following the termination of his relationship with Quixtar.

But Georgia law is not nearly as clear as Quixtar suggests, and Main Street has a more substantial interest in the resolution of this action than the plaintiff had in <u>Haldi</u>, on which Defendant relies.  In <u>Haldi</u>, the Georgia Court of Appeals held only that a medical patient did not have standing to challenge his former doctor's non-competition agreement after his doctor left his medical practice.  641 S.E.2d at 300.

Under Georgia's declaratory judgment statute, Georgia Superior Courts are authorized to entertain declaratory actions brought by "*any* interested party. . . whether or not further relief is or could be prayed . . . [where] the ends of justice require that the declaration should be made."  O.C.G.A. § 9-4-2(b)

12

(emphasis added).[1]  "The declaratory judgment statute is construed liberally."

Enron Capital & Trade Res. Corp. v. Pokalsky, 490 S.E.2d 136, 138-39 (Ga. Ct.

App. 1998).  "Courts merely require the presence in the declaratory action of a

party with an interest in the controversy adverse to that of the [plaintiff]," such

as a former employer.  Id. at 138.

Invoking the broad language of O.C.G.A. § 9-4-2(b), the Georgia Court

of Appeals has held that a non-party to a covenant-not-to-compete may bring a

declaratory judgment action against the former employer of an individual it

seeks to hire to determine the enforceability of the covenant-not-to-compete.

E.g., Enron Capital & Trade Res. Corp. , 490 S.E.2d at 138.  In Enron Capital,

the Georgia Court of Appeals reasoned that the individual's and his current

---

[1] O.C.G.A. § 9-4-2(b) provides:

> In addition to the cases specified in subsection (a) of this Code section, the respective superior courts of this state shall have power, upon petition or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for the declaration, whether or not further relief is or could be prayed, in any civil case in which it appears to the court that the ends of justice require that the declaration should be made; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

Id.

employer's uncertainty regarding whether their employment relationship could legally continue into the future in light of restrictive covenants presented a justiciable case or controversy under Georgia's declaratory judgment statute. Id.; see also Hodach, 374 F. Supp. 2d at 1225 (noting that Georgia law authorizes such an action); accord Miller v. Giesecke & Devrient America, Inc., No. 3:06-CV-1466-D, 2007 WL 518557, at *5 (N.D.Tex. Feb. 20, 2007) (concluding under Texas law that potential employer of individual who had entered covenant not to compete was not fraudulently joined as plaintiff in action seeking declaratory judgment that non-compete was unenforceable).

In light of Georgia's liberally construed declaratory judgment statute and the Georgia Court of Appeals' holding in Enron Capital, this Court cannot say with certainty that Main Street is not a real party in interest in this action.  Main Street seeks a declaration as to the enforceability of certain non-competition clauses in contracts between Quixtar and certain individuals with whom it is presently doing business.  These individuals include Matthew Abraham, the owner of Main Street and a former Quixtar distributor, whose present association with Main Street and New Horizon Association may violate his prior agreements with Quixtar.   Under Georgia law, Quixtar may arguably

14

assert claims arising out of its restrictive covenants with Matthew Abraham

against both Abraham and those who tortiously interfere with its contract with

Mr. Abraham, such as Main Street.  See, e.g., Waldeck v. Curtis 1000, Inc., 583

S. E. 2d 266, 267 (Ga. Ct. App. 2003) (former employer asserted claims against

former employee and current employer for tortious interference with contract

and misappropriation of trade secrets).  Thus, like the prospective employer in

Enron Capital & Trade Res. Corp., Main Street arguably has a sufficient

"interest" in determining the validity of the restrictive covenants between

Matthew Abraham and Quixtar to confer standing under O.C.G.A. § 9-4-2(b).

To be sure, the Court does not hold that Quixtar is a real party in interest

in this action.  The inquiry on a motion to remand does not require this Court to

draw such a firm conclusion.  And it may be that the Georgia Superior Court

will disagree on remand, finding distinctions between this action and the court's

decision in Enron Capital & Trade Res. Corp.

But the Court's inquiry ends where uncertainty under state law begins.

The mere possibility that a Georgia court would conclude that Main Street is a

real party in interest is sufficient to defeat jurisdiction and require remand of

this action.  Hodach, 374 F. Supp. 2d at 1225.  As the Court has explained,

under O.C.G.A. § 9-4-2(b) and <u>Enron Capital & Trade Res. Corp.</u>, 490 S.E.2d at 138, such a possibility is present.  Accordingly, Quixtar has not carried its burden to demonstrate that Main Street is a fraudulently joined party.

### C.     Fraudulent Misjoinder

Defendant's final ground in opposition to remand is that, under Georgia law, Plaintiff Main Street was improperly joined as a Plaintiff under Georgia's rules of joinder and thus "could not have proceeded with a claim of its own in the removed state-court action had the case not been removed."  (Def.'s Opp. [26] at 15.)  Defendant argues that the claims of non-diverse Main Street arose out of different transactions and different contracts between Quixtar and the other Plaintiffs and thus were fraudulently joined under Georgia procedural law. <u>See</u> O.C.G.A. § 9-11-20(a).

The Eleventh Circuit has recognized a form of "fraudulent misjoinder," whereby the plaintiff improperly attempts to defeat the defendant's right of removal by bringing claims against a resident defendant that are "egregiously" misjoined.  <u>See</u> <u>Tapscott v. MS Dealer Serv. Corp.</u>, 77 F.3d 1353 (11th Cir. 1996) ("Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action."),

abrogated on other grounds by <u>Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069 (11th Cir. 2000); <u>see</u> <u>also</u> 14B WRIGHT, MILLER & COOPER, FED. PRAC. & PROC. 3d § 3723, at 658 (describing "fraudulent misjoinder" as a "new form of fraudulent joinder").  In <u>Tapscott</u>, the Eleventh Circuit concluded that the resident defendants were fraudulently misjoined under Federal Rule of Civil Procedure 20 ("Rule 20") because the resident defendants had no real connection with the controversy involving the non-resident defendants.  77 F.3d at 1360.  In reaching its decision, the Eleventh Circuit made clear that misjoinder constitutes fraudulent joinder only if it is "egregious," and "mere misjoinder" does not constitute fraudulent misjoinder.  <u>Id</u>.

Stated differently, Defendant cannot demonstrate the existence of federal jurisdiction (and thus invoke its right to remove) simply by showing that Plaintiffs could not have proceeded under state joinder rules.  Rather, Defendants must go further and convince this Court to *ignore* the presence of Plaintiff Main Street for the purposes of its own jurisdictional analysis by demonstrating that the misjoinder of a resident party rises to the level of egregiousness or gross impropriety.  <u>Tapscott</u>, 77 F.3d at 1360 ("[W]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district

17

court that [the plaintiffs'] attempt to join these parties is so egregious as to constitute fraudulent joinder."); see also Walton v. Tower Loan of Miss., 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004) ("It is thus apparent that, for Tapscott to be applicable, this court would be required to find a level of misjoinder that was not only improper, but grossly improper . . . .").

Although the parties debate whether the Court must look to the state or federal rules of joinder in measuring the egregiousness of Plaintiff's joinder,[2] the Court need not resolve the choice-of-law question because it concludes that,

_____

[2] It is unsettled whether courts should look to the rules of joinder in the state court or in the Federal Rules of Civil Procedure for purposes of the fraudulent misjoinder analysis.  See Greene v. Novartis Pharm. Corp., No. 7:07-CV-00091-HL, 2007 WL 3407429, at *4 n.1 (noting that "[t]here is apparently a split of authority as to whether state or federal joinder rules apply in cases involving a fraudulent misjoinder allegation," but concluding that the resolution of that issue was not necessary in light of similarity of Georgia and federal rules of joinder).  In Tapscott, the Eleventh Circuit, without specifically addressing the choice-of-law issue, applied Rule 20 of the Federal Rules of Civil Procedure in concluding that the joinder of certain claims was fraudulent.  77 F.3d at 1360.  This Court has previously done the same.  See Regions Bank v. Metamorphix, No. 2:05-CV-100 (Story, J.) (applying Rule 20 of the Federal Rules of Civil Procedure in analyzing claim of misjoinder for purposes of removal jurisdiction).  Many other courts, however, have looked to the law of the state in which the case was initially filed to determine whether a misjoinder was fraudulent.  See, e.g., Palermo v. Letourneau Techs., Inc., 542 F. Supp. 2d 499, 517 (S.D. Miss. 2008) (concluding, after thorough review of the case law, that application of more restrictive Mississippi rule of joinder as opposed to federal Rule 20 avoids "danger of aggrandizement of federal jurisdiction" and an "affront to the notion of federalism").

under either analysis, Defendant has failed to demonstrate fraudulent misjoinder.  Under the Georgia rule of joinder (which Defendant advocates as the more restrictive), "[a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the *same transaction, occurrence, or series of transactions or occurrences* and if any question of law or fact common to all of them will arise in the action."  O.C.G.A. § 9-11-20(a) (emphasis added).   Defendant contends that, because the individual Plaintiffs entered into different agreements with Quixtar containing the non-compete and non-solicitation clauses at issue, Plaintiffs' claims do not arise out of the same transaction or series of transactions and thus are fraudulently misjoined.

The Court disagrees.  "The Civil Practice Act provides for the liberal joinder of claims and parties for the beneficent purpose of avoiding multiplicity of suits, conflicting decisions, and to see that justice and equity obtains in all situations."  <u>Continental Ins. Co. v. Mercer</u>, 130 203 S.E.2d 297, 299 (Ga. Ct. App. 1973).  Although the Georgia rules do not allow mere "logically related" claims to be joined, <u>see</u> <u>Howard Motor Co., Inc. v. Swint</u>, 448 S.E.2d 713, 714 (Ga. Ct. App. 1994), as do the federal rules, <u>see</u> Fed. R. Civ. P. 20(a), Georgia

law does provide that claims of multiple plaintiffs may be joined where they arise from the same "series of transactions."  O.C.G.A. § 9-11-20(a),  Here, the Court cannot say with certainty that Plaintiffs' claims do not arise out of the same series of transactions.  The individual Plaintiffs in this action were all former Quixtar distributors with identical contracts with Quixtar.  Those contracts were developed by Quixtar and amended from time to time and simultaneously made effective as to all Quixtar distributors.  They were all a part of a unique, complex, and interconnected multi-level marketing relationship with Quixtar.  The individual and non-individual Plaintiffs, including Main Street, now seek to compete with Quixtar by affiliating with a similar marketing company, Mona Vie, in a downstream business relationship via a single entity, New Horizon Association.  Each Plaintiff seeks the same relief: a declaration of non-enforceability of the non-compete and non-solicitation provisions included in Defendant's unified distributorship contract.

Under these circumstances, the Court cannot conclude that Defendant has met its burden to demonstrate that Plaintiffs' joinder of their claims was so

"egregious" as to constitute fraudulent misjoinder.[3] <u>Cf.</u> <u>Miller v. Giesecke &</u>
<u>Devrient America, Inc.</u>, No. 3:06-CV-1466-D, 2007 WL 518557, at *5 (N.D.
Tex. Feb. 20, 2007) (concluding under Texas law that potential employer of
individual who had entered covenant not to compete was not fraudulently
joined as plaintiff in action seeking declaratory judgment that non-compete was
unenforceable).  Reasonable minds could differ on the question of whether
Main Street's claims arise from the same series of transactions as the other
Plaintiffs' claims in this action, and Defendant has not directed the Court to any
case applying Georgia law that construes the "same series of transactions"
requirement of O.C.G.A. § 9-11-20(a) in a manner that forecloses the
possibility that a Georgia court would allow the joinder of Main Street's claims
in this action.  Absent such authority, uncertainty exists as to whether this Court

---

[3]  In light of the uncertainty as to the propriety of Plaintiffs' joinder, the most appropriate course of action would have been for Defendant to challenge misjoinder in state court before it sought removal.  <u>See</u> 14B C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3723, at 658 (3d ed. 1998) ("[T]he fraudulent-joinder doctrine and its allied jurisprudence adds a further level of complexity—and additional litigation—to a federal court's decision regarding removal jurisdiction.  The complexity is increased if the Eleventh Circuit's admonition that not all procedural misjoinder rises to the level of fraudulent joinder is accepted and because numerous additional decisions will be needed to clarify the distinction.  In many situations this confusion easily could be avoided by having the removing party challenge the misjoinder in state court before seeking removal.").

has subject matter jurisdiction.  That uncertainty requires remand.  Accordingly,
Plaintiff's Motion to Remand is **GRANTED**.

## II.    Plaintiffs' Request for Attorney Fees

Plaintiff requests that this Court impose costs and fees upon Defendant
pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the
case may require payment of just costs and any actual expenses, including
attorney's fees, incurred as a result of the removal."   The purpose of § 1447(c)
is not to punish defendants for improper removal, but to compensate plaintiffs
for expenses associated with obtaining a remand order.  Publix Supermarkets,
Inc. v. United Food & Commercial Workers Int'l Union AFL-CIO & CLC, 900
F. Supp. 419, 422 (M.D. Fla. 1995).  Thus, attorney's fees may be awarded
even in the absence of a showing of bad faith.  Id. at 421; see Graham
Commercial Realty, Inc. v. Shamsi, 75 F. Supp. 2d 1371, 1373 (N.D. Ga. 1998)
("A finding of bad faith or improper purpose by the removing party is not
necessary.").

An award of attorneys' fees is solely in the discretion of the court.
Graham, 75 F. Supp. 2d at 1373; Gray v. N.Y. Life Ins. Co., 906 F. Supp. 628,
631 (N.D. Ala. 1995); see also See Bauknight v. Monroe County, 446 F.3d

1327, 1329 (11th Cir. 2006) (reviewing denial of costs and fees for abuse of discretion). Nevertheless, the exercise of the Court's discretion is not unfettered. In Martin v. Franklin Capital Corp., 546 U.S. 132, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005), the Supreme Court recognized § 1447(c) neither favors or disfavors the award of fees. As the Court recognized, "[b]y enacting the removal statute, Congress granted a right to a federal forum to a limited class of state-court defendants. If fee shifting were automatic, defendants might choose to exercise this right only in cases where the right to remove was obvious." Id. at 711. At the same time, however,

> [t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff.

Id. In view of these competing principles, the Court held that,

> the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. [cits.] In applying this rule,

23

> district courts retain discretion to consider whether
> unusual circumstances warrant a departure from the rule
> in a given case.

Id.

Applying this standard, the Court finds an award of reasonable attorney's fees and costs inappropriate. Defendant has raised a colorable argument that this Court has jurisdiction over this action. While the Court ultimately rejects Defendant's position and declines to exercise jurisdiction, the Court finds both that Defendant's removal of the action was objectively reasonable and that an award of attorney's fees would fail to further the "larger objectives" of § 1447(c). As such, insofar as Plaintiffs requests attorney's fees in their Motion to Remand, that request is **DENIED**.

### III.    Motion to Stay, Compel Arbitration, and Dismiss

As a result of the Court's decision above, Defendant's Motion to Stay Litigation, Compel Alternative Dispute Resolution, and Dismiss [21] is **DENIED as moot**.

### Conclusion

For the foregoing reasons, Plaintiffs' Motion to Remand [22] is **GRANTED**.   This action is hereby **REMANDED** to the Superior Court of

24

White County, Georgia.  Defendant's Motion to Stay Litigation, Compel

Alternative Dispute Resolution, and Dismiss [21] is **DENIED as moot**.

Plaintiffs' Motion for Status Conference [36] is **GRANTED nunc pro tunc**.

      **SO ORDERED** this  13th  day of June, 2008.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)